All right, our next case this morning is 18-2622, Stephen Voigt v. John Wetzel. If I'm pronouncing Voigt correctly. Ms. Choi, you'll tell me if I mispronounce that or your name. And we also have a supervising attorney, Mr. Roth. Mr. Roth, will you be arguing or just supervising? I will just be supervising, Your Honor. We filed a motion last week for Ms. Choi to argue, so she'll present on behalf of Mr. Voigt. Very well, that was my understanding. All right, Ms. Choi, you're ready to proceed? Yes, Your Honor. May it please the court. My name is Cammy Lynn Choi and I represent Mr. Stephen Voigt. May I reserve three minutes for rebuttal? Yes. Thank you, Your Honor. Mr. Voigt's pro se complaint alleged that prison officials at SCI Fayette rejected multiple pieces of mail addressed to him. Without providing him any notice or an opportunity to appeal the rejection of that mail. The district court's dismissal of each of Mr. Voigt's three claims should be vacated and remanded. I would like to focus primarily on the due process claim. The district court dismissed Mr. Voigt's 14th Amendment procedural due process claim, concluding that he lacked a constitutionally protected interest in mail addressed to him. However, that decision ignored clear Supreme Court and Court of Appeals precedent. Establishing that prisoners have a constitutionally protected liberty interest in mail addressed to them. As I understand your argument on that, Ms. Choi, you're claiming that Procunier v. Martinez is not supplanted by Turner v. Safley. At least that's the shorthand I have in my mind. Is that your argument or is there more nuance to it? Yes, Your Honor. We believe that Procunier v. Martinez governs the procedural due process claim in this case. Whereas on the other hand, the inquiry of whether the prison policy regulating prisoner correspondence is substantively valid is governed by the Turner test, which does have a more deferential standard. However, as it relates to the procedural due process claim and the lack of notice in this case, Procunier unequivocally held that prison officials must give notice and an opportunity to appeal when they reject prisoners' incoming mail. And that's the end of the matter, really, for the due process claim, right? Yes, Your Honor. All right. What about the harder arguments? As to free speech, I didn't really see Mr. Voigt challenging the prison policy's burden on free speech. And with respect to access to the courts, he's still in the game, so to speak, on PCRA review in the state court, is he not? Yes, Your Honor. Mr. Voigt's PCRA claim is indeed still pending. As for the free speech claim, Mr. Voigt properly alleged a First Amendment free speech claim that should have survived a motion to dismiss. As you can see on Joint Appendix 24 in Mr. Voigt's complaint, he alleged that prison officials had been outright rejecting his mail that lacked a return address. And this allegation went beyond simply just the McLern letter to include, quote, other letters at other times. And so this pattern and practice of mail interference, not simply limited to a single instance of withheld mail, certainly raises an inference of a First Amendment claim under this court's precedent in Villaregu versus Raynaud. What case says that prisons can't have a policy that says mail without return addresses will be rejected as contraband? Your Honor, there isn't a controlling case in this circuit that says that mail cannot be rejected for lacking a return address. So how do you get over that hurdle? I guess you're asking us to be the first court to say that. It just seems that you have a stronger footing to say that when they do reject the mail under procunior, the prison has a duty to notify your client. But is it your position? You want us to write an opinion that says prisons have to accept mail without return addresses under the First Amendment requires that? Your Honor, on this appeal, we are not necessarily asking this court to evaluate all factors of the Turner test. Rather, our main claim with respect to Mr. Voight's First Amendment free speech claim is that the district court should have engaged in a more meaningful evaluation under the Turner test. For example, they should have identified with some particularity the penological interest and whether it is neutral and legitimate, and also appraised whether the stated penological interest had a rational connection to the prison policy at issue. Unfortunately, it appeared that the district court simply cited to two other cases, Nassar versus Morgan and Sanders versus Rose, almost verbatim, without really engaging with the facts specific to this case on the Turner test, and then proceeded to dismiss Mr. Voight's claim as to the First Amendment free speech claim on the pleadings. Well, what burden should be placed on the prison if the articulated reason is there's no return address? We think there are safety concerns at issue. Yes, Your Honor. If indeed the penological interest put forth by the state is a security interest, as this court has recognized in Wolf versus Ashcroft, Ramirez versus Pugh, and Banks versus Beard, the goal should have been more specifically articulated and identified and evaluated by the district court. And furthermore, there needed to be at least some independent analysis specific to the facts of this case. And finally, the party should have been allowed to adduce some evidence to show that indeed, for example, if security is really at issue, a letter or letters that had previously been delivered that lacked a return address did indeed pose a security risk to the prison or prison guards and other prisoners. Counsel? I'm sorry, what remedy are you seeking for the 14th due process violation? Yes, Your Honor. Mr. Voigt in his pro se complaint requested both compensatory and punitive damages for the constitutional due process violation. He also requested any other relief or compensation as may be appropriate. And in his response to the government's motion to dismiss below, he specifically requested injunctive or declaratory relief such that the prison policy of rejecting mail without a return address and without notice would no longer be in force. Counsel, let me ask you for a moment about due process. You've got a liberty interest theory and a property interest theory. Is there any reason the distinction matters between the two? If we find the liberty interest of Virginia versus Martinez, is there any reason to reach the property interest? Your Honor, no, I don't believe so. If there is a protected liberty interest, then we can simply move to the second element of a due process claim, which is just to us, yes. Now, let's assume that we do decide to reach the property interest. You say courts have long acknowledged that federal statutes and regulations governing the U.S. Postal Service create property entitlements at page 28 of your brief, but I didn't see any citations. Can you give us any citations from the statutes and regulations that do in fact create property interests? I'd like to see federal citations, Pennsylvania state law citations. I didn't see anything. Yes, Your Honor. My understanding is that the Supreme Court has long also recognized that the federal statutes and regulations governing the U.S. Postal Service do create a property interest for the recipient of mail matter that is duly deposited into the mail system. There are a number of USPS regulations What case or what regulations? Do you have a citation for me? Yes, the case, the Supreme Court cases of Thiel v. Felton, as well as American School of Magnetic Healing v. McNulty, Thiel v. Felton. In Thiel v. Felton, the Supreme Court explicitly noted that mail matter that is duly deposited into the mail becomes the property interest of the recipient of that mail. And in American School of Magnetic Healing v. McNulty, the Supreme Court held similarly. But, you know, that's if the addressee has paid the postage fee and he has a right to possession of it and it can bring a suit for conversion. It's a little different. You know, McNulty is a case where there were some money and money orders in there. But, you know, this is a letter that doesn't have a monetary value in the way that, you know, the hobby materials in Peratt or the money orders or checks in McNulty had. It just doesn't seem to fit in the same way. His real interest here is in the information that could lead to his release from prison, right? It's not that there was something of monetary value in the letter. Your Honor, Mr. Voight alleged that multiple pieces of his mail had been rejected. So it is not just the McClern letter that is at issue here. There may have been other letters or pieces of mail containing money or other items of monetary value in them. Unfortunately, Mr. Voight cannot identify all of the mail matter that was addressed to him simply because prison officials never gave him notice. Can I ask about remand? Let's say, you know, should we hold this case either now or on remand until the PCRA litigation is done? Doesn't it seem to make more sense to see whether he gets relief through the PCRA process first? Your Honor, Mr. Voight is alleging that he has already suffered actual injuries because he has been deprived of trying his case with all material evidence. The prison's withholding of the McClern letter for such a long time has caused actual injury to Mr. Voight as he is now unable to effectively investigate into the letter further while McClern was alive and to perhaps even present Mr. McClern's testimony live before the PCRA court. And so the remedy he is seeking in this case is in fact different from the remedy in his PCRA proceeding. The remedy in this case that Mr. Voight is asking for is for damages because of the, among other things, mental anguish that he has experienced from being foreclosed from effectively investigating further into the letter as well as the many years that he has spent trying to litigate issues in the state court that he may not have had to had the letter been delivered in time or if he had been provided notice in time. I am aware that I am almost at time or that I have reached the end of my time and I've reserved the rest of my time for rebuttal. Thank you very much, Judge Greenaway. Anything else at this time? No, thank you. All right. Thank you, Ms. Choi. We'll hear you on rebuttal. Mr. Mullen. Thank you, Your Honor. May it please the court, Daniel Mullen from the Pennsylvania Office of Attorney General on behalf of Secretary Wetzel. I'd like to begin by addressing my friend's argument that procuner applies to this case. And it is our view that it has no application whatsoever. And I think with due respect to my friend, he's kind of oversimplifying what procuner says. It doesn't say you must provide notice regardless of the reason. It says you must provide notice if the prison is engaging in an act of censorship. And in that case, what the prison was doing was censoring outgoing mail that magnified grievances about the prison and that expressed certain political views. And to take some cases from this court, in Jones v. Brown and Fauntroy v. Beard, the prisons were opening legal mail outside of the inmate's presence. And what this court said is that practice could have a chilling effect on speech. Finally, in Banks v. Beard, there were restrictions on newspapers and magazines that inmates could receive. And this court held that it implicated the First Amendment. All of those cases involve active censorship and a concern about the chilling effect on speech. But the requirement that a letter have a return address implicates the recipient's free speech rights, no more so than the requirement of a stamp and an envelope. This is simply a security requirement. And by the way, I think if we take a step back and remove ourselves from the prison context for a moment, the return address requirement is something that's quite common beyond the prison context. If I wanna send a letter to the White House, I must put a return address on that envelope. If I wanna send a letter to my cousin who is in the Marine Corps and lives on a military base, I don't have a return address, that letter will never get to him. And it's the exact same security concerns that drive those policies that drive the policy here. What do they do with the letter? Do they just throw it away? I'm not entirely sure what they do with the letter. They may, as in the case of the Department of Corrections, just return it back to the Postal Service. So Mr. Counsel, it seems to me there's an issue about how high a level of specificity we should re-procuniate. You wanna read it understandably at a very low level of specificity and say it's an interest in receiving mail free from censorship. But why isn't the more natural way to say this is an interest in sending and receiving ideas and the censorship was the conduct that abridged the liberty interest there? And it might be that this is not an abridgment or this is a reasonable abridgment that should survive, but that doesn't mean that the liberty interest has that definition gerrymandered into it, if you see what I mean. So why should we read it at that very low level that's tied to the facts of procuniate rather than at a high level of the sending and receiving of letters generally is the information exchange is generally the liberty interest. And then we get to whether the censorship or the return address or anything else is a reasonable abridgment and what kind of process has to be followed. Your Honor, I think that the concern and this court talked about it in the Pi Lambda case, you could tie almost any government act or regulation and say it has some incidental or indirect impact on speech. But I think both this court and the United States Supreme Court have rejected the idea that something that merely has an incidental impact on speech warrants First Amendment scrutiny. If you are pulled over in your car because you are on your way to give a political speech, you can't get out of the speeding ticket by saying, yeah, but I was going to give a political speech. What drew the government action in that scenario was that you were speeding, not that you were on your way to deliver a speech. And if I can analogize to the United States Supreme Court's decision in Arcara v. Cloud Books, you know, a state cannot shut down a bookstore because it sells books that convey certain ideas, but it can shut down that bookstore, as was the case in Cloud Books, if it is operating a prostitution ring, because it is not the expressive conduct that drew the government to act. Your phrasing just now was incidental restrictions are fine, but Procunier at page 409 says specifically, we're turning to the guidance for the general problem of incidental restrictions on First Amendment liberties. So they understood this also to be an incidental restriction. I guess the question is how incidental is incidental, but I'm not sure where we align there. Yeah, I understand the difficulty in drawing the line, Your Honor. I mean, I think in this instance, we are very clearly on the other side of it because we don't even open the letter when a mailing comes in and doesn't have a return address. What the department does is it puts a stamp on it that says not accepted for delivery and it returns it to the Postal Service. So we don't know who it's from. We don't know what it says. And we didn't know what this letter said, basically until the appellant filed his grievance. So this is simply about maintaining the security of the prison and making sure that contraband and dangerous things cannot be sent through the mail. And it is wholly unrelated to whatever the content of the communication may be. If we agree with your argument, Mr. Mullen, do we have to disagree with Bonner v. Outlaw from the Eighth Circuit and Miller v. Downey from the Seventh Circuit? I believe so, Your Honor. I think with due respect to our friends in the Eighth Circuit and Bonner, I think they engage in the same flawed reading of Martinez. And in the Miller case, Your Honor, I don't think that's exactly on all four is the Seventh Circuit case because that dealt with withheld legal journals and this court has already sort of dealt with withholding of publications and has said that that does implicate the First Amendment. So I don't think either case involved a return address requirement. But yes, with respect to the Eighth Circuit, we would have to disagree with the specific reading of Martinez. All right. And you don't have any circuit authority that goes your way. You want us to be the first court in the country to say that the pecuniary holding and rule does not apply to the factual scenario presented here, namely the prison policy without discretion that just automatically treats as contraband and rejects mail without a return address. Your Honor, it would not make this court the first in the country because in Turner versus Safley, the Supreme Court clarified that pecuniary doesn't apply to incoming mail anyway. So I mean, it has limited applicability just for that reason alone. All right. Why don't you suss that out for us a little bit? Why does Turner, for purposes of this case, overrule pecuniary? Well, or how do we know that? Well, this court in Nassir and in other cases made clear that it is interpreted Turner as overruling Martinez with respect to incoming mail and only applies with respect to outgoing. That's a very strange reading, given that Turner begins its analysis with pecuniary as the starting point. So it seems strange to view it as rejecting it. Well, Your Honor, I believe in Turner, what the issue was there, it was correspondence between inmates at different institutions. So you were dealing simultaneously with outgoing mail and incoming mail. And and my reading of this court's decision in Nassir is that it views Turner as only applying to as applying to incoming mail and pecuniary as applying to outgoing only. But isn't Turner a First Amendment case? It's partially a First Amendment case. With respect to the communication between inmates from other institutions, but but there again, the it's essentially an act of censorship that's going on in that. OK, but then how does that bear on the procedural due process issue? Well, as a threshold before we get to procedural due process, we need to have a protected liberty or property interest. And so if we don't have a First Amendment liberty interest, and I don't believe we have a protected property interest in Judge Bibas to the questions you are asking about a federal property right in mail. I'd like to address the two cases that they rely upon for that proposition. Teal and American School of Magnetic Healing. I'll note that Teal is an 1851 case that predates the 14th Amendment altogether. But neither case squarely holds that there is a property right in mail that goes to the US Post Office. Teal dealt with whether a state court had jurisdiction over a suit against the Postmaster General. And as you reference in the American School of Magnetic Healing versus McNulty case, that dealt with the Postmaster General that was withholding mail that contained payments for a mind body healing program. And what the court determined there was that nothing in federal law allowed the Postmaster General to do that. So I don't see how either of those courts can establish a property right. And so if we have no property right and we have no protected liberty interests, we never get to what due process requires because there's no protectable interest here. Let me ask you this question, counsel. Your position that the district court was correct in its conclusion that Boyd had availed himself of deprivation remedies by receiving his withheld mail, albeit months later, from Mail Recovery Center at the Post Office and then filed his grievances? Well, I understand what your honor's discomfort with that might be, because if they're never told about it, it's hard to say that they have an adequate post deprivation remedy. But I think so. I don't think what the court was saying is that for all purposes, there's an adequate post deprivation remedy. I think he was just acknowledging sort of the unusual reality of this particular case that he did ultimately learn of it, albeit from a third party and get his hands on it. And so what's key here is the one particular letter with McLaurin. But obviously there's other mail, some of which was permanently lost, and he's left without a post deprivation remedy. Your honor, if you're referring to the other allegation about missing letters, I think it's actually important that we sort of take a closer look at what that specific allegation was at Joint Appendix 24. What he said was because a friend's letter was missing and not returned, she feared she'd send it without a return address. And so he has a sort of speculative hearsay statement that says maybe there was this other letter out there. And my understanding of the function of that paragraph in his complaint was to explain his story of how he ultimately started reaching out to post offices and then got the McLaurin letter. So I don't read his complaint as intending to file suit over this alleged letter that is somewhere out there in the world, and we don't exactly know whether it was specifically rejected by the Department of Corrections or not. So I think all we really have is the one McLaurin letter. And one final thing before I wrap up, your honor. With respect to their claim on the access to courts front, that he has already suffered actual injury because of his inability to litigate, quote, with all material evidence, which is a parenthetical phrase that appears in the Christopher opinion. I think it's important that we put that phrase from Christopher in its proper context. And the court went on to say in the very same paragraph that the ultimate object of these sorts of access claims is to provide relief obtainable in no other suit in the future. So I think, yes, the inability to gather evidence can have some relevance, but only in so far as you have lost the underlying remedy. And he has not lost the underlying remedy here. The PCRA court could enter a ruling tomorrow, granting him the exact relief he seeks. And if that happens, his claim would be moved altogether. Mr. Mullen, does that suggest would the secretary and president administration be open to staying this proceeding until the PCRA petition is fully resolved? That hadn't occurred to me. I mean, I think if it would probably make more sense to have the district court consider the matter in the first instance, rather than have this court do so, because the district court never ultimately reached the merits. But OK, well, what will you have any objection to our remanding it in the district court than staying this such that if there's no relief in PCRA at that point, if there was a ripeness problem with access to courts, it would be it would be gone by them. I wouldn't have an objection to that, Your Honor. You don't want to remand on the due process argument, though, right? You want to win on that one. Correct. I believe this court should affirm on the due process grounds. And just to make sure I understand your argument, you're saying that Nasir identified a distinction between incoming and outgoing mail for outgoing mail. Pecuniary still applies for incoming mail. Turner applies not pecuniar. And because mail without return addresses is contraband, there's no you don't have a property or liberty interest in contraband. Is that your argument? Yes, that's our position, Your Honor. And if there are no other questions, we would just ask that you affirm the district court. We are open, as Judge Bibas suggested, to having the district courts or see what happens on the access to courts claim. But with respect to the due process claim, we believe there is no property or liberty interest, as we said. And this court should affirm the district court's dismissal of that claim. Can I just trouble you one more minute, though, on the free speech claim, not the access to courts claim? Yes, Your Honor. Why should we affirm the free speech claim? Well, it's our position that a free speech claim wasn't raised. But in my view, insofar as there was a free speech claim raised, you should affirm because a requirement that a letter have a return address has only an indirect and incidental impact on speech. Okay, all right. All right. Thank you, Mr. Mullen. We'll hear rebuttal from Ms. Choi. Your Honors, I have three quick points on rebuttal. First, the state's attempt to limit procuniae to notice being required when there's censorship based on the content is simply not supported by the case law. As we've cited in our briefs, a number of courts of appeals, including the 5th, 7th, 8th, 9th, and 10th circuits have applied procuniae and they haven't made the distinctions that the government is making here. That's correct, Ms. Choi. But in Nasir, we did. I'm looking at Nasir at page 369, I guess it is. And right there, we say, we determined that the policy statement passes both tests, the four-part Turner test as to incoming mail and the two-part Martinez test as to outgoing mail. That seems like a pretty clear statement from this court that incoming mail and outgoing mail are evaluated under different standards or different tests, doesn't it? Your Honor, I believe the incoming versus outcoming mail distinction is relevant to the First Amendment claim as evaluated under the Turner test. And as procuniae, the Supreme Court and procuniae also did, the First Amendment claim is distinct from the 14th Amendment procedural due process claim. For procedural due process, notice must be furnished regardless of the content of the incoming mail or whether or not it is contraband. And multiple courts of appeals- How do we know that? So, I mean, if I mail a shiv to my friend in prison, he has a constitutional right to receive that mail or if it gets rejected, he has a right to be notified that my shiv came but wasn't delivered? Yes, Your Honor, procedural due process. Prisoners are entitled to procedural due process regardless of what the content in the mail or letter is as recognized by procuniae and multiple courts of appeals following procuniae that have upheld the due process requirements in procuniae. There may be a penological safety reason for not giving certain items of mail to prisoners or to Mr. Boych, but there is no reason why prison officials cannot give him the notice that he is entitled to. Furthermore, the Pennsylvania's own administrative regulations itself recognize and contemplate at 37 Pennsylvania Code Section 93.2F that when prison officials reject mail, they must give notice when the letter is rejected for a list of enumerated reasons in that provision of the code and that they must hold that mail for seven days to allow the prisoner a reasonable opportunity to appeal that decision. It would be somewhat. Does that apply to this situation though, or does that only apply to mail properly defined? In other words, mail that does include a return address. That provision applies to mail between prisoners or between current and former prisoners, which is content neutral. And it would be somewhat inconsistent or perhaps troubling that prisoners would not be given notice when their incoming mail lacks a return address, but that they would be given notice under the Pennsylvania Code if that incoming mail contains threatening or obscene material.  some of the questioning that Judge Bibas had regarding the distinction between Turner and Percunie, and I wanted to affirm that the First Amendment question is distinct. The First Amendment question of whether the prison policy is substantively valid is distinct here from the 14th Amendment due process claim governing whether or not Mr. Voight was given the proper notice and opportunity appeal, which he indisputably was not. And other courts of appeals have recognized that the due process aspect of Percunie did survive Turner. And finally, just a brief point about the other letters that have been lost. The PCRA transcript that the state asked this court to take judicial notice of on page nine explicitly notes, Mr. Voight notes that this letter that his friend sent to him, he has never been able to retrieve. And I believe I am at the end of my time, Your Honors, and we would ask this court to vacate and remand for further proceedings. Very well. Thank you for the excellent argument, Ms. Choi and Mr. Mullen. The court also wants to thank Mr. Roth and his law firm for supervising here and for the pro bono representation of Mr. Voight. This quality of the briefing and the argument was extremely helpful to the court in trying to to decide this case. So the court's grateful for your pro bono assistance and thank you as well, Mr. Mullen. The court will take the matter under advisement.